### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ALAIN PEREZ BOSMENIER,

     Petitioner,

v.                                                              No. 1:26-cv-00211-DHU-JHR

GEORGE DEDOS, Warden, Cibola County
Correctional Center; JOEL GARCIA, Field
Office Director, ICE Enforcement and
Removal Operations, El Paso Field Office;
KRISTI NOEM, Secretary of Homeland
Security; U.S. DEPARTMENT OF HOMELAND
SECURITY; and PAMELA BONDI, Attorney
General of the United States; in their official capacities,

     Respondents.

### ORDER GRANTING HABEAS PETITION

THIS MATTER is before the Court on Petitioner Alain Perez Bosmenier's Petition for

Writ of Habeas Corpus ("Habeas Petition") Doc. 3. Petitioner alleges that he was unlawfully re-

detained by Immigration and Customs Enforcement ("ICE") after previously being paroled into

the United States to seek lawful status, in violation of the Due Process Clause of the Fifth

Amendment. *Id.* ¶¶ 7, 87-94.[1] He requests that the Court order Respondents to immediately release

him under reasonable conditions of supervision, or, in the alternative, order Respondents to

---

[1] Petitioner also alleges that Respondents have subjected him to prolonged detention in violation
of the Due Process Clause of the Fifth Amendment, interfered with his ability to seek lawful
permanent residency in violation of the Due Process Clause of the Fifth Amendment,
demonstrated deliberate indifference to his medical needs while in detention in violation of the
Due Process Clause of the Fifth Amendment, and failed to provide him with reasonable
accommodations while in detention in violation of the Rehabilitation Act. *Id.* ¶¶ 79-84, 95-110.
However, because the Court grants Petitioner's Habeas Petition on his parole-related Due
Process claim, the Court "decline[s] to address th[ese] remaining claims of error." *Scott v.
Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

provide him with a bond hearing within seven (7) days. *Id.* at 29 ¶¶ 6-7. Having carefully considered the parties' briefs, the record, and the relevant law, the Court **GRANTS** Petitioner Alain Perez Bosmenier's Petition for Writ of Habeas Corpus.

## I.
## BACKGROUND

1. Petitioner Alain Perez Bosmenier is a native and citizen of Cuba. *Id.* ¶ 25.

2. Petitioner applied to enter the United States through the Customs and Border Protection ("CBP") One Application. *Id.* He received an appointment to present himself at the border. *Id.*

3. Pursuant to his scheduled appointment, Petitioner presented himself at the San Ysidro Port of Entry in California on September 11, 2024, to pursue lawful status. *Id.* ¶ 26.

4. That same day, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear initiating removal proceedings. Doc. 3-4. His Notice to Appear charged him as an "arriving alien." *Id.* at 1.

5. Also, that same day, DHS issued Petitioner a Form I-94 paroling him into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) to pursue lawful status. Doc. 3 ¶ 27. Petitioner's Form I-94 authorized his parole through September 9, 2026. Doc. 3-3 at 1.

6. After being paroled, Petitioner established a life in the United States. He resided with family members in Miami, Florida. Doc. 3 ¶ 28.

7. Petitioner was issued an Employment Authorization Document, better known as a work permit, and obtained employment at a local wood shop. *Id.* According to his employer, Petitioner was a hard-working, talented, and skilled carpenter. Doc. 3-10.

8. Consistent with the purpose of his parole, Petitioner also pursued lawful status. He filed an Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act. Doc. 3 ¶ 49.

9. On February 11, 2025, Petitioner obtained a ride from an acquaintance to a haircut appointment in Hialeah, Florida. *Id.* ¶ 29; Doc. 3-5 at 1. Shortly after entering the vehicle, Hialeah Police Department officers stopped the vehicle because it had been reported stolen. Doc. 3 ¶ 29; Doc. 12-2 at 3. Petitioner, merely being a passenger in the vehicle, was unaware that the vehicle had been stolen. Doc. 3 ¶ 29. Nonetheless, Petitioner was arrested for grand theft of a vehicle and taken to the Turner Guilford Knight Correctional Center in Miami, Florida. *Id.*; Doc. 12-2 at 2.

10. On February 12, 2025, DHS became aware of Petitioner's arrest and authorized a Form I-200 Warrant. Doc. 12 at 3; Doc. 12-3.

11. On March 13, 2025, the prosecution declined to pursue a grand theft charge against Petitioner and entered a disposition of "No Action." Doc. 3 ¶ 30; Doc. 3-5 at 1.

12.  On March 14, 2025, ICE took Petitioner into immigration custody pursuant to the Form I-200 Warrant. Doc. 12 at 3; Doc. 12-3. Petitioner was not provided with any written notice that his parole, which was still active, was being terminated, and that he was, therefore, being re-detained. Doc. 3 ¶ 93.

13. On March 23, 2025, Petitioner was transferred to the Cibola County Correction Center in Milan, New Mexico, where he remains in custody. *Id.* ¶ 33.

14. On March 25, 2025, DHS terminated the parole program that Petitioner's parole was a part of by Federal Register notice. Doc. 12 at 3 n. 5 (citing Termination of Parole Process for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025)).

15. On April 8, 2025, DHS revised Petitioner's Form I-94, to reflect termination. *Id.*; Doc. 12-4. Petitioner was not provided any written notice of the termination. Doc. 3 ¶ 32. His counsel later learned of the early termination by independently searching and reviewing Petitioner's I-94 on the CPB website. *Id.*

16. While in immigration custody, Petitioner filed an Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture. Doc. 3 ¶ 34.

17. On October 31, 2025, Petitioner had his individual hearing before the Immigration Court. *Id.* ¶ 35; Doc. 12-5 at 1-2. The Immigration Judge ("IJ") denied Petitioner's Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture, and entered an Order of Removal. Doc. 12-5 at 1.

18. On November 28, 2025, Petitioner appealed the Order of Removal to the Board of Immigration Appeals ("BIA"). *Id.* at 2. The appeal before the BIA remains pending. *Id.* Accordingly, the Order of Removal is not final. *See* 8 U.S.C. § 1101(47)(B) (noting that an Order of Removal "shall become final upon the earlier of . . . a determination by the [BIA] affirming such order"); *see also* 8 C.F.R § 1241.1(a) ("An order of removal made by the [IJ] at the conclusion of proceedings under Section 240 of the [Immigration and Nationality] Act shall become final . . . [u]pon dismissal of an appeal by the [BIA].").

On January 30, 2026, Petitioner filed a Habeas Petition. Doc. 3. In the Habeas Petition, Petitioner alleges that his detention is governed by 8 U.S.C. § 1226(a) because he was re-detained by ICE while already residing in the United States. *Id.* ¶ 86. Alternatively, Petitioner argues that, even if his detention is governed by 8 U.S.C. § 1225, his re-detention and termination of parole without pre-deprivation notice or a hearing violates his due process rights. *Id.* ¶¶ 7, 87-94. He asks this Court to, in relevant part, 1) exercise jurisdiction over this matter pursuant to 28 U.S.C. §

2241; 2) issue an Order to Show Cause directing Respondents to show cause why the Habeas Petition should not be granted within three (3) days, consistent with 28 U.S.C. § 2243; 4) declare that his detention violates his constitutional, statutory, and regulatory rights; 5) issue a Writ of Habeas Corpus requiring that Respondents immediately release him from custody under reasonable conditions of supervision, or, in the alternative, order Respondents to provide him with an immediate, individualized custody determination before a neutral decisionmaker within seven (7) days, at which the Government bears the burden to justify continued detention by clear and convincing evidence; 6) enjoin Respondents from re-detaining him absent constitutionally adequate procedures, including written notice and a hearing at which Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks; 7) temporarily stay his transfer from the District of New Mexico while the Habeas Petition is pending; and 8) grant such other relief as the Court deems just and proper. *Id.* at 29-30.

On February 11, 2026, the Court entered an Order to Show Cause ordering Respondents to respond to the Habeas Petition within ten (10) business days. Doc. 6.

On February 20, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO"). Doc. 7. In the Motion for TRO, Petitioner reiterated the arguments made in his Habeas Petition and requested that the Court order his immediate release from custody. *Id.* at 11-13, 17.

On February 24, 2026, the Court held a hearing on Petitioner's Motion for TRO. Doc. 8. At the hearing, Petitioner and Respondents disagreed as to whether Petitioner's detention is governed by § 1225 or § 1226. *See* Doc. 24. Respondents' counsel also stated that she did not have all of information regarding whether Respondents had provided Petitioner with written notice that his parole was going to be terminated early. *Id.* at 2. Accordingly, the Court found that a response

from the Government was necessary before moving forward. *Id.* The Court ordered Respondents to address in their response whether Respondents provided Petitioner with written notice that his parole was going to be terminated early. *Id.* The Court also ordered Petitioner to address in her reply whether Petitioner's detention was governed by § 1225 or § 1226 and due process. *Id.*

On February 25, 2026, Respondents filed their response. Doc. 12. In their response, Respondents argue that Petitioner's detention is governed by § 1225(b)(1) because he is an "arriving alien." *Id.* at 2. Respondents further argue that Petitioner's Habeas Petition requires the Court to review a § 1225(b)(1) determination, and that the Court lacks jurisdiction to do so. *Id.* at 10-11.[2] Alternatively, Respondents argue that, in the event that the Court has jurisdiction, Respondents lawfully terminated Petitioner's parole and that Petitioner's due process rights have, therefore, been met. *Id.* at 11-12.

Also, on February 25, 2026, Petitioner filed his reply. Doc. 13. In the reply, Petitioner reiterates his argument that his detention is governed by § 1226(a) because he was detained in the interior of the United States. *Id.* at 4-6, 10-12. Petitioner further argues that, even if his detention is governed by § 1225(b)(1), this Court has jurisdiction to adjudicate his Habeas Petition because he is not challenging his admissibility, and is, instead, challenging his detention. *Id.* at 34-35.

---

[2] Respondents also argue that while the denial of Petitioner's Application for Asylum, Withholding of Removal, and for Withholding Under the Convention against Torture remains pending before the BIA, "this matter is not ripe for judicial review." Doc. 12 at 11. Respondents provide no further analysis or case law explaining why Petitioner's Habeas Petition, which challenges his re-detention, would not yet be ripe. A claim is not ripe if it rests upon "contingent future events that may not occur as anticipated or indeed may not occur at all." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016) (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998)). Petitioner challenges his re-detention and argues that his parole was terminated without pre-deprivation notice or a hearing. Doc. 3 ¶¶ 7, 87-94. Petitioner is already detained, and his parole has been terminated. Thus, this claim does not rest at all upon contingent future events, as the events have already occurred. The Court, therefore, finds that the matter is ripe.

Petitioner also reiterates his argument that, even if his detention is governed by § 1225(b)(1), his re-detention and termination of parole without pre-deprivation notice or a hearing violated his due process rights. *Id.* at 6-10, 14-15.

From February 26, 2026, to March 30, 2026, the parties supplemented the record with additional argument, evidence, and information. *See* Docs. 15 through 19.

On April 7, 2026, Petitioner filed a Second Motion for TRO. Doc. 20. In the Motion for TRO, Petitioner once again requests that the Court order his immediate release from custody. *Id.* at 2.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he was unlawfully re-detained by ICE after previously being paroled into the United States to seek lawful status, in violation of the Due Process Clause.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

### A. Petitioner Is An "Arriving Alien" and His Detention Is Governed By 8 U.S.C. § 1225(b)(1)

Petitioner entered the United States at the San Ysidro Port of Entry and is, therefore, an "arriving alien." *See* Doc. 3 ¶ 26; Doc. 3-4 at 1 (where Petitioner's Notice to Appear charged him as an "arriving alien"); *see also* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry."). As an "arriving alien," Petitioner's detention is governed by § 1225(b)(1). Specifically, before his parole, Petitioner was subject to mandatory detention under § 1225(b)(1)(B)(ii), which states that noncitizens seeking asylum who have passed a credible fear interview "shall be detained for further consideration of" asylum.

Under § 1182(d)(5)(A), a noncitizen classified as an "arriving alien," such as Petitioner, may be "temporarily released [into the United States] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288, 138 S.Ct. 830 (2018). The noncitizen's classification, however, does not change even if he is paroled, and even after such parole is terminated or revoked. *See* 8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or revoked.") Accordingly, the Immigration and Nationality Act's ("INA") implementing regulations provide that § 1225(b)(1)(B)(ii) continues to apply even if that noncitizen is paroled, and even after such parole is terminated or expires. Indeed, the regulations specifically provide that, when parole is terminated or expires, the noncitizen "shall be restored to the status that he [] had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

Petitioner heavily relies on a case by a court in this district finding that a Cuban national's detention was governed by § 1226 to support his argument that his detention is governed by the same. *See* Doc. 13 at 2-3, 5-6 (citing *Capdevila Manzano v. Noem*, No. 2:26-cv-00133-KG-JFR, 2026 WL 371412 (D.N.M. Feb. 10, 2026)). *Capdevila Manzano* is factually distinguishable. In that case, the petitioner did not enter the United States at a port of entry and was, therefore, not an "arriving alien" subject to § 1225(b)(1)(B)(ii). The petitioner, instead, entered the United States without inspection and was, therefore, subject to § 1226. 2026 WL 371412, at *2. Indeed, the respondents in that case conceded that the facts of the case were "substantially similar" to *Patel v. Noem*, No. 1:25-cv-01261-KG-GBW, 2026 WL 103163 (D.N.M. Jan. 14, 2026). *Id.* at *2. *Patel* involved a petitioner who entered the United States without inspection. 2026 WL 103163, at *1.

Petitioner also relies on multiple other cases from this Court and other courts in this district to support his argument that his detention is governed by § 1226(a). *See, e.g.*, Doc. 13 at 11 (citing *Ruiz-Quintinez v. Castro*, No. 2:26-cv-00198-DHU-LF (D.N.M Feb. 10, 2026); *Garcia Domingo v. Castro*, 806 F.Supp.3d 1246 (D.N.M. 2025); *Danierov v. Noem*, No. 2:25-cv-01215-KG-KRS, 2026 WL 45288 (D.N.M. Jan. 7, 2026)). These cases, however, also did not involve petitioners who entered the United States at a port of entry and were, therefore, not "arriving aliens" subject to § 1225(b)(1)(B)(ii). The Court, therefore, finds the factual differences in the cases cited by Petitioner from the present case insufficient to overcome the INA and implementing regulations providing that Petitioner, as an "arriving alien," is subject to § 1225(b)(1)(B)(ii), and continues to be subject to that statute even if paroled and after that parole is terminated or expires.

### B. The Court Has Jurisdiction

Since the Court finds that Petitioner's detention is governed by § 1225(b)(1)(B)(ii), the Court briefly addresses jurisdiction before turning to the merits of Petitioner's Habeas Petition.

Respondents argue that Petitioner's Habeas Petition requires the Court to review a § 1225(b)(1) determination, and that the Court lacks jurisdiction to do so. Doc. 12 at 10-11. Petitioner argues that the Court has jurisdiction because he is not challenging a § 1225(b)(1) determination, and is, instead, challenging his re-detention. Doc. 13 at 34-35.

"[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [§] 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Additionally, no court shall have jurisdiction to review "a decision by the Attorney General to invoke the provisions" of § 1225(b)(1), "the application of [the] section, or "procedures and policies adopted by the Attorney General to implement" the section. *Id.* § 1252(a)(2)(A)(ii)-(iv). Although judicial review of "determinations made under § 1225(b)(1) is available in habeas proceedings," the review is limited to the following determinations 1) whether the petitioner is a noncitizen; 2) whether the petitioner was ordered removed under § 1225(b)(1); and 3) whether the petitioner can prove by a preponderance that he is a noncitizen lawfully admitted for permanent residence, is lawfully admitted as a refugee, or has been granted asylum. *Vaupel v. Ortiz*, 244 F.App'x 892, 894 (10th Cir. 2007) (citing § 1252(e)(2)(A)-(C)).

While Respondents correctly assert that the Court does not have jurisdiction to review a § 1225(b)(1) determination, *see Vaupel*, 244 F.App'x at 895, Respondents incorrectly characterize Petitioner's challenge. Petitioner does not challenge any determination made under § 1225(b)(1) or how that section has been applied to him. Petitioner limits his challenge to his re-detention and the termination of his parole under § 1182(d)(5)(A). Doc. 3 ¶¶ 7, 87-94. Further, Respondents' argument provides no case law demonstrating that review of Petitioner's re-detention and termination of parole under § 1182(d)(5)(A), a statute separate from § 1225(b)(1), is barred by

anything. *See* Doc. 12 at 10-11. Accordingly, the Court has jurisdiction to review Petitioner's Habeas Petition.

### C.  Petitioner Did Not Receive Adequate Written Notice Terminating His Parole

The Court next address whether Petitioner received adequate written notice terminating his parole. Petitioner argues that he did not receive any notice terminating his parole prior to being re-detained, in violation of his due process rights. *Id.* ¶¶ 7, 87-94. Respondents argue that they lawfully terminated Petitioner's parole and that his due process rights have, therefore, been met. 11-12.

A noncitizen classified as an "arriving alien," such as Petitioner, may be released on parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A). The noncitizen must be returned to the custody he was in "when the purposes of such parole . . . have been served." *Id.* Parole automatically terminates when the parole period expires or when the noncitizen departs the United States. 8 C.F.R. § 212.5(e)(1). If parole does not automatically terminate, then, if the purpose for the parole is accomplished or a designated official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i).

The service of a charging document on the noncitizen may constitute sufficient written notice to terminate parole. *Id.* A charging document is defined as a "written instrument which initiates a proceeding before an" IJ. 8 C.F.R. § 244.1. This includes only "a Notice to Appear, a Notice of Referral to [IJ], and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.*

Here, the Court finds that Petitioner's parole was not terminated with sufficient written notice. First, Respondents only served on Petitioner a Form I-200 Warrant when they re-detained him and

essentially terminated his parole. Doc. 12 at 3. The Form I-200 Warrant did not inform Petitioner that his parole was being terminated. *See* Doc. 12-3. Moreover, a Form I-200 Warrant is not a charging document, as it does not initiate proceedings before an IJ.[3] *See id.*

Second, the Notice to Appear that DHS issued when Petitioner entered the United States is insufficient written notice. The Notice to Appear was issued on the same date as Petitioner's Form I-94. Doc. 3-4; Doc. 3 ¶ 27. "[S]ervice of a charging document terminating parole while simultaneously granting parole through a Form I-94 would render the notice requirement a nullity." *Alcide v. De Anda-Ybarra*, No. 1:26-cv-00249-KWR-GBW, 2026 WL 622663, at * 4 (D.N.M. Mar. 5, 2026).

Finally, it is worth mentioning that Petitioner also did not receive any written notice of the subsequent blanket termination of the parole program that his parole was a part of, or of the subsequent revision to his Form I-94 reflecting termination of his parole, and Respondents do not provide any evidence indicating otherwise. Accordingly, Petitioner's parole was not properly terminated when he was re-detained, nor even thereafter.

### D. Respondents' Failure to Provide Petitioner Adequate Written Notice Violates His Procedural Due Process Rights

Petitioner argues that the termination of his parole without adequate notice violates his due process rights. Doc. 3 ¶¶ 7, 87-94. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second

---

[3] The Court also notes that a Form I-200 Warrant is only proper for arrests made pursuant to § 1226. The INA and its implementing regulations confirm as much. *See* § 1226(a) ("On a warrant issued by the Attorney General, a [noncitizen] may be arrested and detained pending a decision on whether [he] is to be removed from the United States."); 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the [N]otice to [A]ppear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of [a] Form I–200 [] Warrant.")

examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

### 1.  Petitioner Possesses a Sufficiently Protected Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. However, under the "entry fiction," noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139, 140 S.Ct. 1959 (2020) (internal quotation marks omitted). This is because such noncitizens cannot be said to have "effected an entry" into the country, *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001), so the only due process rights afforded to them are the "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner," *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012). Beyond this procedural minimum, to create a liberty interest, a statute or regulation must "substantively limit the exercise of official discretion through specifically defined criteria that limit decision making." *Sosa-Valenzuela*, 692 F.3d at 1112.

Here, 8 C.F.R. § 212.5(e), a regulation, specifically limits termination of parole to two situations: 1) automatic termination upon the noncitizen's departure from the United States or the expiration of his parole; or 2) written notice. Petitioner's parole was not automatically terminated because he did not depart the United States, and his parole was active when he was re-detained.

Thus, in accordance with the regulation, Petitioner's parole needed to be terminated upon written notice. As discussed above, Petitioner did not receive adequate written notice terminating his parole prior to being re-detained, nor even thereafter. Therefore, Petitioner possesses a sufficiently protected liberty interest.

### 2. Written Notice Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a sufficiently protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, even assuming that Petitioner's protected liberty interest only extends as far as Congress granted by regulation, Petitioner still has a significant interest in his parole being terminated in accordance with regulatory procedures. Termination upon written notice to him after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is his only procedural safeguard. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980) (holding that because the "requirement of written notice is the only safeguard .... written notice is essential to effectuate a termination").

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here, where Petitioner was not provided any adequate written notice, his only procedural safeguard.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Requiring Respondents to adhere to Petitioner's only procedural safeguard, the written notice requirement, would not cause substantial fiscal or administrative concerns. Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner with written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i).

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a sufficient written notice terminating his parole prior to being re-detained.

### E.  Immediate Release Is the Appropriate Remedy

The Court finds that the appropriate remedy in this case is immediate release. At least one court in this district has found that a petitioner who is re-detained with an unlawful termination of parole is entitled to this relief. *See Alcide*, 2026 WL 622663, at *8. Moreover, this Court has broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992).

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 3) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order under the same conditions of release that were in place before his re-detention on March 14, 2025.

**IT IS FURTHER ORDERED** that Respondents are **RESTRAINED** from re-detaining Petitioner again before properly terminating his parole with adequate written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i).

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, April 20, 2026, confirming Petitioner's timely release.

Finally, because the Court is granting Petitioner relief in this Order, Petitioner's Motion for TRO (Doc. 7) and Second Motion for TRO (Doc. 20) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE